UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN LEE ALI,

       Plaintiff,                      CIVIL ACTION NO. 11-13913

       v.                             DISTRICT JUDGE GEORGE CARAM STEEH

UNIVERSITY OF MICHIGAN         MAGISTRATE JUDGE MARK A. RANDON
HEALTH SYSTEM – RISK
MANAGEMENT,

       Defendant.
_____/

**REPORT AND RECOMMENDATION TO
GRANT DEFENDANT'S MOTION TO DISMISS (DKT. 4)**

Carolyn Lee Ali ("Plaintiff") acting *pro se*, brought this suit against the University of Michigan Health System – Risk Management ("Defendant"). Plaintiff alleges, generally, that Defendant unlawfully refused to provide her with continued medical care.

Defendant's motion to dismiss (Dkt. 4) is pending. Judge George Caram Steeh referred the motion to this Magistrate Judge for a report and recommendation (Dkt. 5). Plaintiff filed a timely response to the motion (Dkt. 7); oral argument was held on April 12, 2012. For the reasons set forth below, it is **RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** and that Plaintiff's case be **DISMISSED**.

**I. FACTUAL BACKGROUND**

For purposes of Defendant's motion to dismiss, it is assumed that Plaintiff's Complaint allegations are true. Plaintiff's Complaint (Dkt. 1) consists of an eighteen page, single-spaced, letter to the Court; it does not list any counts or causes of action, nor does it state what relief Plaintiff seeks. The Complaint is a lengthy narrative discussing Plaintiff's medical aliments and

her interactions with physicians and staff employed by the University of Michigan Health System.

During oral argument, Plaintiff attempted to clarify the nature of her claims against Defendant. Plaintiff said that University of Michigan Health System physicians misdiagnosed her as having "Myasthenia Gravis,"[1] when in fact she has "Neuromyotonia"[2] (Dkt. 1 at 1). As a result of this alleged misdiagnosis, Plaintiff said that University of Michigan Health System staff engaged in a cover-up and "black-listed" Plaintiff from receiving future medical care at the University. Plaintiff alleges that a nurse (Sandra Jones-Yapp) and a "risk-management" employee (Juliette Larsen) filed false police reports against Plaintiff. In these reports, Plaintiff was described as verbally abusive, threatening and disruptive to hospital staff. Plaintiff claims that these "trumped-up" police reports (Dkt. 1; Compl. at 17) are preventing her from receiving medical care.

In response to Defendant's motion to dismiss, Plaintiff filed a letter (Dkt. 7) with the Court, in which she reiterates her medical travails. Like Plaintiff's Complaint, Plaintiff's response fails to identify any causes of action, or request any relief. Plaintiff did attach several exhibits to her response letter, including: (1) a letter (Dkt. 7 at 16; CM/ECF Pagination) from Ms. Larsen, an employee of Defendant's "risk-management" department, stating that Plaintiff could no longer receive medical care at the University of Michigan due to a "breakdown in the

---

[1] Mysthenia Gravis is "an autoimmune disease of neuromuscular function due to the presence of antibodies to acetylcholine receptors at the neuromuscular junction; characteristics include muscle fatigue and exhaustion that fluctuates in severity." *Dorland's Illustrated Medical Dictionary* (31st Ed.) 1233.

[2] Neuromyotonia is a "myotonia [atonic condition of the musculature of the body] caused by electrical activity of a peripheral nerve; characterized by stiffness, delayed relaxation, fasciculations [muscle twitches] and myokymia [muscle quivering]." *Id.* at 71, 1286.

physician-patient relationship;" (2) medical records (Dkt. 7 at 22-29); and (3) the police reports that Plaintiff claims are "fraudulent" (Dkt. 7 at 31-46).

Defendant filed a supplemental brief (Dkt. 8) in response to Plaintiff's March 12, 2012 "supplemental letter." However, no such supplemental letter appears on the Court's docket. The only filings from Plaintiff are the Complaint (Dkt. 1), a certificate of service (Dkt. 2) and a letter filed on February 14, 2012 (Dkt. 7, which is actually a response to Defendant's motion to dismiss). There is no letter from Plaintiff filed on March 12, 2012. In any event, according to Defendant's supplemental brief (Dkt. 8), Plaintiff's un-docketed supplemental letter attempts to frame her claims as Americans With Disabilities Act ("ADA") violations.

## II. ANALYSIS

### A. Applicable Legal Standard

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint-not to decide the merits of the case. It is well established that a complaint need not set forth in detail all of the particularities of the plaintiff's claim. Instead, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 566 U.S. 662, 678-679 (2009). While legal conclusions can provide the framework for a complaint, all claims must be supported by factual allegations. *Id.* The Supreme Court has indicated that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949; *see also Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action" is insufficient).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. The plausibility requirement is not the same as a "probability requirement" but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A *pro se* pleading must be liberally construed and be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *pro se* status does not exempt the plaintiff from the requirement that she comply with relevant rules of procedural and substantive law. *See Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir.1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief ..." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard is liberal, it does require more than the bare assertions of legal conclusion. *See Lillard v. Shelby Co. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

### B. Plaintiff Has Sued An Improper Party And Her Claims Are Barred By The Eleventh Amendment

Defendant argues that Plaintiff's Complaint should be dismissed because she has sued an improper party ("University of Michigan Health System – Risk Management") and, even if Plaintiff had sued the proper party (the Board of Regents of the University of Michigan), her claims would be barred by Eleventh Amendment immunity. Defendant is correct on both counts.

The only named Defendant is the University of Michigan Health System – Risk Management. It goes without saying that a party not named in a lawsuit is not a party to the lawsuit; indeed, Fed. R. Civ. P. 4(a) requires a plaintiff to "identify ... the parties" to the suit. The University of Michigan hospitals are "an adjunct of the medical department of the University, which is a state educational instrumentality maintained by the public at public expense, controlled and operated by the Board of Regents." *Robinson v Washtenaw Circuit Judge*, 228 Mich. 225, 230 (1924). Therefore, any suit intended to be brought against any part of the University of Michigan hospitals or health system must be brought against the Board of Regents of the University of Michigan. *Id.* at 227; *see also* Mich. Comp. Laws § 390.4 ("The board of regents shall constitute the body corporate, with the right, as such, of suing and being sued, of making and using a common seal, and altering the same."); *Estate of Ritter v University of Michigan, Board of Regents*, 851 F.2d 846 (6th Cir. 1988) (action against Board of Regents for failure to admit a potential patient into hospital emergency room). At no time did Plaintiff request leave to amend her Complaint to substitute the Board of Regents as Defendant in this matter. Since Plaintiff has filed suit against an entity that is not subject to suit, Plaintiff's case should be dismissed for this deficiency alone.

Assuming Plaintiff had sued the Board of Regents, this Court would then have to determine whether Eleventh Amendment immunity applied. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Board of Regents of the University of Michigan is a state agency for purposes of the Eleventh Amendment. *See* Mich. Const. Art. 8 § 5; *see also Estate of Ritter by Ritter v. University of Michigan*, 851 F.2d 846, 848 (6th Cir. 1988) ("the Board of Regents unquestionably is a state agency to which the [Eleventh] amendment applies...."). Thus, the Board of Regents is entitled to Eleventh Amendment immunity, unless some recognized exception applies.

"There are ... three qualified exceptions to Eleventh Amendment immunity[.]" *Lawson v. Shelby County, TN*, 211 F.3d 331, 334 (6th Cir. 2000). "First, a state may waive the protection of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334. "The second exception to the Eleventh Amendment bar is that Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute." *Id.* "Under the third exception, a federal court may enjoin a 'state official' from violating federal law." *Id.* at 335 (citing *Ex parte Young*, 209 U.S. 123 (1908)). Although Plaintiff's Complaint did not contain any prayer for relief, during oral argument on Defendant's motion to dismiss, Plaintiff stated that she is seeking money damages from Defendant, not injunctive relief. Thus, the third exception does not apply, and Plaintiff's only hope for salvaging the Court's jurisdiction over her claims is if the Board of Regents has consented to the suit or if Congress has abrogated the Board of Regent's immunity; neither event has occurred.

Because of the overriding concern for the sanctity of the federalist system, federal courts will find that a state has expressly waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-306 (1990). In this case, Defendant's first responsive pleading was a motion to dismiss (Dkt. 4) in which Defendant argued that Plaintiff's Complaint was squarely barred by the Eleventh Amendment. Clearly, Defendant has not consented to this lawsuit. Federal courts can find that a state has implicitly waived its immunity, but only in very narrow circumstances, such as when a state actor engages in extensive discovery or seeks judgment on the merits without raising the immunity issue. *See, e.g., Ku v. Tennessee*, 322 F.3d 431, 435 (6th Cir. 2003) (holding that the defendant waived immunity when, "[i]nstead of asserting its Eleventh Amendment immunity defense, Tennessee engaged in extensive discovery and then invited the district court to enter judgment on the merits"). In this case, Defendant has raised, preserved, and reiterated the affirmative defense of Eleventh Amendment immunity by immediately filing a motion to dismiss. Therefore, Defendant has not waived its Eleventh Amendment immunity.

Concerning abrogation, "'[t]o temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure,' " federal courts apply a two-part test "to determine whether Congress has abrogated the States' sovereign immunity ...." *Seminole Tribe*, 517 U.S. at 55-56 (1995) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 227-28 (1989)). A court must determine "first, whether Congress has 'unequivocally expressed its intent to abrogate the immunity,' ... and second, whether Congress has acted 'pursuant to a valid exercise of power.'" Id. (quoting *Green v. Mansour*, 474 U.S. 64,

68 (1985)). Plaintiff's Complaint (Dkt. 1) and response letter (Dkt. 7) do not provide any basis from which to conclude Congress intended to abrogate Michigan's Eleventh Amendment immunity. As such, Plaintiff has failed to demonstrate that immunity does not apply in this case.

  **C.**   ***Plaintiff Has Failed To State A Claim And This Court Does Not Have Jurisdiction Over Plaintiff's Lawsuit***

  Plaintiff also failed to properly invoke the jurisdiction of this Court. Where a plaintiff is proceeding without the assistance of counsel, this Court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D.Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the pro se complaint at issue.).

  At the outset, Plaintiff's Complaint in this case does not meet the pleading requirements of the Fed. R. Civ. P. 8 and does not provide Defendant with proper notice of the claims being asserted. Plaintiff's Complaint was filed in the form of an eighteen-page letter. It contains no caption, is not titled as a Complaint pursuant to Fed. R. Civ. P. 7(a), and does not contain numbered paragraphs that are limited to a single set of circumstances which are capable of being answered. More importantly, Plaintiff's Complaint does not contain a short and plain statement of the grounds for the Court's jurisdiction, does not contain a short and plain statement of the

claim(s) she is making pursuant to which she claims she is entitled to relief, and does not contain any demand for relief.  In short, the Complaint completely fails to identify or state a claim upon which relief can be granted.

This Magistrate Judge is sensitive to the fact that *pro se* litigants should be given some latitude in presenting claims to the Court.  However, Plaintiff's Complaint does not state a claim over which this Court has jurisdiction, even under a very permissive reading.  Distilled to its essence, Plaintiff's Complaint alleges that she was wronged by Defendant because Defendant refuses to provide her with ongoing medical care.  "'Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ... which is not to be expanded by judicial decree.'"  *Freeland v. Liberty Mut. Life Ins. Co.*, 632 F.3d 250, 255 (6th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Pursuant to this authority, federal courts have the power to adjudicate claims "arising under the Constitution, laws, or treaties of the United States" or where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332; *see also* U.S. Const. art. III, § 2.  This Magistrate Judge is unaware of any federal statute providing a cause of action against a doctor or hospital system for refusal to provide medical care in non-emergency situations.[3]  Thus, it does not appear that this Court has federal

---

[3] In emergency situations, the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), "requires emergency patients, treated in a hospital setting, to be screened and stabilized prior to their release." *Burd ex rel. Burd v. Lebanon HMA, Inc.*, 756 F. Supp. 2d 896, 899 (M.D. Tenn. 2010) (citations omitted).  Plaintiff's claims do not, however, appear to revolve around emergency care.  Rather, Plaintiff's claims appear to involve scheduled doctors' office visits.  Furthermore, the letter from Defendant to Plaintiff informing Plaintiff that she could no longer receive care at the University of Michigan noted that the "University of Michigan remains available to you in an emergency situation" (Dkt. 7 at 16, CM/ECF pagination).

question jurisdiction over Plaintiff's claims.[4]

That leaves diversity jurisdiction. As far as this Magistrate Judge can ascertain, Plaintiff's claims sound in medical malpractice, or perhaps defamation (against Mss. Jones-Yopp and Larsen); these are state law claims. Although not pled by Plaintiff in the Complaint, the parties' citizenship may be diverse, but this is not certain. According to the docket, Plaintiff appears to currently live in Hedgesville, West Virginia; the University of Michigan is, of course, located in Ann Arbor, Michigan. However, at some point in time, Plaintiff was a Michigan resident (*see* Dkt. 7 at 16; CM/ECF Pagination) and it is unclear when Plaintiff moved from Michigan to West Virginia. This makes a difference, because "[t]he general rule is that diversity is determined at the time of the filing of a lawsuit." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006). Thus, if Plaintiff moved to West Virginia after she filed the Complaint, there would be no diversity of citizenship. More problematic, however, is that diversity jurisdiction requires the amount in controversy to "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. Plaintiff's Complaint does not allege what she is seeking in relief, thus it cannot be determined from the face of the pleadings if the amount in controversy is satisfied. In sum, Plaintiff's Complaint does not contain "a short and plain statement of the grounds for the court's jurisdiction," as required by Fed. R. Civ. P. 8(a)(1) and, in any event, it does not appear that this Court has jurisdiction over Plaintiff's claims even under

---

[4] As noted earlier, Defendant filed a supplemental brief (Dkt. 8), which counters a purported March 12, 2012 letter from Plaintiff in which she attempted to frame her claims as ADA claims. However, no filing from Plaintiff on the Court's docket (Dkts. 1 & 7) discusses an ADA claim or any other federal statutory claim. Furthermore, Plaintiff's Complaint fails to state a *prima facie* case of discrimination under Title II of the ADA. *See, Jones v. City of Monroe*, 341 F.3d 474,477 (6th Cir. 2003) (to establish a *prima facie* case under Title II of the ADA, Plaintiff must allege that (1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability).

an extremely permissive reading of Plaintiff's Complaint. Thus, Plaintiff's Complaint should be dismissed.

### C. *Plaintiff Has Not Properly Served Defendant*

Finally, Plaintiff filed this case on September 8, 2011 (Dkt. 1). Under Rule 4, Plaintiff had until January 6, 2012 (120 days) to properly serve Defendant with a Summons and Complaint. A Return of Service (Dkt. 2) – dated January 5, 2012 – indicates that a Summons and Complaint was served upon University of Michigan Health System – Risk Management. Defendant argues in its motion to dismiss (Dkt. 4 at 7-8) that Plaintiff's Summons was deficient because it did not list Plaintiff's name and address (in violation of Fed. R. Civ. P. 4(a)(1)©) and because the Summons and Complaint was not served on a person with authority to accept service (such as the University of Michigan's General Counsel's office), but rather was merely dropped off at a University office. During oral argument on Defendant's motion to dismiss, Plaintiff conceded that the purported service on January 5, 2012 was improper.

Fed. R. Civ. P 4(m) provides, in relevant part:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

At no time did Plaintiff request an extension of time to serve the Complaint. Defendant's motion to dismiss served as notice under Fed. R. Civ. P. 4(m) that Defendant was challenging service. Plaintiff has agreed that service was improper in this matter and has not taken any steps to properly service Defendant. As such – even if Plaintiff named a proper defendant, Eleventh

Amendment immunity did not apply and Plaintiff stated a legally viable claim which properly invoked this Court's jurisdiction – Plaintiff's claims should still be dismissed without prejudice because she has not properly served Defendant and the deadline for service has expired.

### III. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** the Defendant's motion to dismiss be **GRANTED**, and that Plaintiff's case be **DISMISSED**.

The parties may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

                                               s/Mark A. Randon
                                               MARK A. RANDON
                                               UNITED STATES MAGISTRATE JUDGE

Dated: May 4, 2012

## CERTIFICATE OF SERVICE

     *I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 4, 2012.*

                                               *s/Melody R. Miles*
                                             *Case Manager to Magistrate Judge Mark A. Randon*